**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| **MIDCOAST FISHERMEN'S** ) | |
| **ASSOCIATION, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Civil Action 07-02336 (HHK)** |
| ) | |
| **CARLOS M. GUTIERREZ, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____) | |

**PLAINTIFFS' MOTION TO COMPEL COMPLETION
OF THE ADMINISTRATIVE RECORD**

Pursuant to this Court's Minute Order entered on June 23, 2008, the plaintiffs respectfully move this Court for an Order directing the defendants to complete the administrative record in this case.

As the plaintiffs explain in the accompanying memorandum, defendants have unlawfully restricted the record by omitting data and factual information that are both referenced in, and necessary to support, the decision by the defendant National Marine Fisheries Service ("Fisheries Service" or "NMFS") to deny a Petition filed by plaintiffs in October of 2007. That Petition requested NMFS to protect the critically depleted population of New England cod and other groundfish by prohibiting certain fishing by herring trawl vessels that is taking place in areas that have been closed to all other fishing in order to protect groundfish populations. By restricting the record, the defendants have

1

deprived the plaintiffs and this Court of the opportunity for meaningful judicial review of defendants' failure to protect cod and other New England groundfish.

Pursuant to Local Civil Rule 7 (m), counsel for the plaintiffs conferred with counsel for the defendants concerning this motion during June of 2008.  Counsel for the plaintiffs and counsel for the defendants have been unable to agree about the disposition of this motion.

Therefore, for the reasons outlined in the attached memorandum, the plaintiffs respectfully request that the Court grant this motion and enter an Order in the proposed form attached, directing defendants to complete the administrative record within thirty (30) days after entry of the Order.


Dated:  July 22, 2008


Respectfully submitted,


/s/ Stephen E. Roady
_____
Stephen E. Roady
D.C. Bar. No. 926477
Roger Fleming
Maine Bar No. 8905
Earthjustice
1625 Massachusetts Avenue, N.W.
Washington, D.C.  20036
202-667-4500 Tel; 202-667-2356 Fax

Counsel for the Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                  )

**MIDCOAST FISHERMEN'S**       )
**ASSOCIATION, et al.,**          )
                                  )

        **Plaintiffs,**         )
                                  )

       **v.**               )     **Civil Action 07-02336 (HHK)**
                                  )

**CARLOS M. GUTIERREZ, et al.,**   )
                                  )

        **Defendants.**      )
_____)

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
## TO COMPEL COMPLETION OF THE ADMINISTRATIVE RECORD

Stephen E. Roady
D.C. Bar. No. 926477
Roger Fleming
Maine Bar No. 8905
Earthjustice
1625 Massachusetts Avenue, N.W.
Washington, D.C. 20036
202-667-4500 Telephone; 202-667-2356 Fax

Counsel for the Plaintiffs

Date: July 22, 2008

# TABLE OF CONTENTS

**INTRODUCTION**

**A.**     **The New England Groundfish Fishery and the Impacts
of Herring Trawlers** ……………………………………………………… **2**

**B.**     **The Petition to Remove Herring Trawlers from
Protected Groundfish Areas** ……………………………………………... **5**

**ARGUMENT**

**I.**     **The Fisheries Service Must File a Complete Administrative Record
That Includes all Relevant Information** …………………………………… **10**

**II.**     **Plaintiffs are Entitled to the Data and Factual Information
Upon Which the Fisheries Service Based Its Bycatch Estimation** ……… **15**

**III.**     **The Fisheries Service Must Include in the Administrative Record
Materials on Which It Based Its Decision to Deny Permanent Relief** …… **17**

**CONCLUSION**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| ————————————————— ) | | |
| **MIDCOAST FISHERMEN'S ASSOCIATION, et al.,** ) | | |
| ) | | |
| **Plaintiffs,** ) | | |
| ) | | |
| **v.** ) | **Civil Action 07-02336 (HHK)** | |
| ) | | |
| **CARLOS M. GUTIERREZ, et al.,** ) | | |
| ) | | |
| **Defendants.** ) | | |
| —————————————————) | | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
TO COMPEL COMPLETION OF THE ADMINISTRATIVE RECORD**

This motion seeks to compel completion of an administrative record that is lacking in supporting facts and data to such a significant degree that it will hamper effective judicial review of defendants' unlawful failure to protect the critically depleted groundfish populations in ocean waters off the coast of New England.  Specifically, this motion seeks to compel defendants to add the following information to the administrative record for this case:

1. The groundfish bycatch "estimation" referenced in the defendants' "Decision Memorandum" denying the plaintiffs' October 2007 Petition that sought to protect New England groundfish;

2. The data and factual information upon which this "estimation" and related conclusions are based; and

3. Material showing that defendants actually considered plaintiffs' request for permanent rulemaking.

This information is essential for plaintiffs to be afforded review on the whole record that was

before the defendants at the time of the decision that triggered the filing of this case.

## INTRODUCTION

This case challenges the decision by the defendants Secretary of Commerce Carlos M.

Gutierrez, the National Oceanic and Atmospheric Administration, and the National Marine

Fisheries Service (hereinafter collectively referred to as "defendants" or "Fisheries Service" or

"NMFS") to deny the plaintiffs' October 2007 Petition that requested both (1) immediate and (2)

permanent rulemaking to exclude herring fishing vessels from trawling inside several "closed

areas" of the ocean off the coast of New England.  Designed as a fundamental part of NMFS'

efforts to restore cod and other groundfish[1] populations, these areas have been closed for nearly

15 years to virtually all types of fishing in order to reduce groundfish mortality and protect

juvenile and spawning fish.  Since 1998, however, the defendants have allowed herring trawlers

to fish in these closed areas.  The defendants' failure to exclude herring fishing vessels from

these closed areas has resulted in the death of thousands of pounds of adult and juvenile

groundfish as "bycatch"[2] in the herring fishery.  This failure perpetuates the overfished condition

of New England cod and other groundfish in violation of the Magnuson-Stevens Fishery

Conservation and Management Act ("MSA").

### A.  The New England Groundfish Fishery and the Impacts of Herring Trawlers

Groundfish are historically the target of New England's most important fishery.  They

include 19 different stocks of species such as cod, haddock, and flounder managed in a fishery

---

[1] "Groundfish" are fish such as cod, haddock, and flounder that live on or very near the ocean floor.

[2] Bycatch is "fish which are harvested in a fishery, but which are not sold or kept for personal use." 16 U.S.C. § 1802(2). In other words, bycatch refers to fish caught incidentally while fishermen are targeting a different species. "In simple terms, bycatch kills fish that would otherwise contribute toward the well-being of the fishery or the nation's seafood consumption needs." *CLF v. Evans*, 209 F. Supp. 1, 12 (D.D.C. 2001) (footnote omitted).

management plan as a "multispecies" fishery ("Groundfish FMP"). Today, due to years of overfishing, waste from bycatch, and habitat destruction, New England's groundfish fishery provides only a fraction of its historic economic benefit to regional fishing communities.  In fact, a fully rebuilt groundfish fishery would provide more than twice the current landings and nearly triple the current revenues generated by this fishery.  *See* New England Fishery Mgmt. Council, U.S. Dep't of Commerce, Final Amendment 13 to the Northwest Multispecies Fishery Management Plan I-568-70 (2003), *available at*

http://www.nefmc.org/nemulti/planamen/final_amend13_dec03_section_22.pdf.

The Fisheries Service's efforts to restore groundfish populations through the New England Groundfish FMP have not been effective. *See* National Marine Fisheries Service, Report on the Status of the U.S. Fisheries for 2006, 7, 19 (2007), *available at* http://www.nmfs.noaa.gov/sfa/domes_fish/StatusoFisheries/2006/2006RTCFinal_Report.pdf. The June 2007 NMFS Status of the U.S. Fisheries Report concludes that despite changes to the Groundfish FMP over the past several years that were predicted to end overfishing  and rebuild stocks, overfishing continues on 8 of 19 groundfish stocks, and that there are still 13 groundfish stocks that remain overfished.  *See id.*[3]   Many of the same groundfish stocks that suffer from overfishing are also overfished and continue to struggle on the brink of collapse. *Id.* at 19. *See generally* Northeast Fisheries Science Center,  Assessment of 19 Northeast Groundfish Stocks Through 2004: 2005 Groundfish Assessment Review Meeting ("2005 GARM"), *available at* http://www.nefsc.noaa.gov/nefsc/publications/crd/crd0513/.

---

[3] Since the plaintiffs' Petition was filed, a June 2008 Report has been completed that shows no improvement in the status of the New England groundfish stocks. *See* NATIONAL MARINE FISHERIES SERVICE, REPORT ON THE STATUS OF THE U.S. FISHERIES FOR 2007, 16-17  (2008), *available at* http://www.nmfs.noaa.gov/sfa/domes_fish/StatusoFisheries/2007/2007StatusofUSFisheries_Report_to_Congress.pdf.

In an effort to protect groundfish, the defendants closed several areas to groundfish fishing in 1994 after the groundfish populations collapsed. *See* 59 Fed. Reg. 63,926, 63,928 (Dec. 12, 1994). These closures remain in place. However, a rule promulgated by defendants in 1998 allowed midwater trawl fishing vessels in the closed areas based on the assumption that midwater trawl vessels either do not catch groundfish, or catch only "negligible" amounts of groundfish. *See* 63 Fed. Reg. 7727, 7728-29 (Feb. 17, 1998) (AR 30-34). [4] This assumption – and therefore the rule itself – was based on scant scientific data. *See* AR at 702-03; Framework Adjustment 18 to the Northeast Multispecies Fishery Management Plan (AR at 13). Moreover, although the monitoring and data collection for this fishery remains woefully inadequate, the data that are available demonstrate that the defendants' central assumption – that herring trawl vessels do not catch groundfish – is flatly incorrect.

In fact, contrary to the underlying premise for the 1998 rule, the data show that midwater trawl vessels often catch groundfish in significant amounts. For example, recent observer data from 46 midwater trawl trips in 2006 showed bycatch of haddock totaling over 18,000 pounds, along with 7,000 pounds of other groundfish bycatch. *See* AR 703. In addition, in a 2004 enforcement action against herring midwater trawl vessels, the defendants prosecuted vessels that were found illegally attempting to land thousands of pounds of juvenile haddock and hake bycatch in Maine and Massachusetts. One of these vessels alone was estimated to have as much as 30,000 - 48,000 pounds of juvenile haddock on board, which can reasonably be estimated to be the equivalent of three to five times that amount of haddock had it been allowed to grow to maturity. *See* AR 10-11. After these enforcement actions, the midwater trawl industry acknowledged in 2006 that it was catching significant amounts of groundfish as bycatch. The

---

[4] Plaintiffs will reference administrative record materials as "AR [page number].".

industry further stated that midwater trawl vessels will not be able to avoid catching increasing amounts of groundfish as bycatch in the event groundfish populations are rebuilt.  *See* Final Rule Implementing Framework Adjustment 43 to the Northeastern Multispecies FMP, 71 Fed. Reg. 46,871, 46,874 (Apr. 16, 2006) (AR 136).

### B.  The Petition to Remove Herring Trawlers from Protected Groundfish Areas

In view of this history and additional new information, plaintiffs sought to protect these depleted groundfish populations by filing a Petition for Immediate and Permanent Rulemaking with the defendant Secretary of Commerce on October 12, 2007, seeking to exclude herring midwater trawl vessels from  groundfish closed areas on both an emergency and permanent basis (the "Petition"). *See* AR at 694-768.

Herring is a pelagic species that is active primarily at night.  This means that herring are typically found swimming in the water column at nighttime.  In contrast, herring are usually found near the seafloor during the day.  H.B. Bigelow & W.C. Schroeder, <u>Fishes of the Gulf of Maine</u> 142 (Bruce B. Collette & Grace Klein-MacPhee, eds., 3d ed. 2002).  Like most pelagic species, herring are typically targeted with midwater gear.  "Midwater" trawl ships fish for herring by dragging nets that are as wide as a football field and as high as a five-story building behind their vessels, and at times they operate in pairs as "pair trawls" so they can drag even larger nets strung between both vessels.  These nets have small mesh so they can capture herring and other small fish like mackerel.  The fishing gear is characterized as "midwater" trawl gear because it was originally intended to be fished in the middle of the water column where pelagic species like herring are commonly found, especially at night.  However, the gear is often deliberately fished at the bottom of the water column (where herring commonly can be found during the day) where the nets capture juvenile and adult groundfish as bycatch, along with

various types of marine debris and rocks. *See e.g.*, AR 10 n.4; AR 774, 822**;** Northeast Fishery

Science Center Observer Program Presentation Slides "The Northeast Fisheries Observer

Program" at 29 (showing "Haul Timing on Herring Trips 2005-2007"), *available at*

http://www.nefmc.org/herring/index.html.

The plaintiffs' October 2007 Petition demonstrated that – contrary to the premise on

which the defendants' 1998 rule was based – herring trawl ships kill significant amounts of adult

and juvenile groundfish as bycatch in the groundfish "closed areas" while targeting herring. The

reason for this is straightforward: the regulatory assumption is wrong. Herring "midwater" trawl

nets are not always towed entirely in the middle of the water column, but in fact are towed in the

bottom of the water column where they strike the ocean floor and capture and kill significant

amounts of groundfish. *See id.* This wasteful killing of groundfish as bycatch further depletes

groundfish populations, especially when juveniles are killed because they are unable to grow to

maturity and spawn. Further, it undermines the potential for the groundfish closed areas to help

rebuild depleted groundfish populations to healthy levels. Accordingly, the October 2007

Petition requested the Fisheries Service to take two actions: (1) to take emergency action to

exclude herring trawlers from fishing in the groundfish closed areas, and (2) to initiate formal

rulemaking procedures to permanently exclude midwater trawl vessels from groundfish closed

areas. AR 695-96.

In response to the plaintiffs' Petition, the Fisheries Service sent an undated one page

letter to counsel for the plaintiffs by electronic mail on November 29, 2007. In that letter, the

defendants declined to take emergency action to exclude herring midwater trawl ships from

groundfish closed areas. *See* AR at 915. This letter only addressed the plaintiffs' request for

emergency rulemaking. However, a subsequent letter sent in response to plaintiff's inquiries

appears to suggest that the initial letter was also intended to deny the plaintiffs' request that the Fisheries Service initiate rulemaking procedures to permanently exclude midwater trawl ships from the closed areas. *See* AR at 924.

On April 23, 2008, NMFS delivered the administrative record to the plaintiffs. The record is incomplete on its face. It simply does not include the facts, information, and data that is both referenced in the NMFS decision and that would be required to support the defendants' decision to reject the plaintiffs' Petition.

In particular, the record contains a November 1, 2007 "Decision Memorandum" from the Regional Administrator of the Northeast Region of NMFS that recommends that defendants deny the Petition. AR 911-12. This Decision Memorandum was signed "I concur" by the Deputy Assistant Administrator for Regulatory Programs on November 20, 2007. *Id*. at 912. It therefore constitutes the key document reflecting the determination by defendants to reject the Petition. In pertinent part, this Decision Memorandum states that:

(1) "this issue [of groundfish bycatch by herring trawlers in the closed areas] has been ongoing since the New England Fishery Management Council (Council) established the NE multispecies closed areas and made the decision to allow midwater vessels continued access" and

(2) "*reports have not indicated an increase in bycatch in this fishery over levels previously considered*" and

(3) "we have reviewed the most recent observer data and found no cause for concern or belief that an emergency exists" and

(4)  "Despite *the estimation based on observer data that bycatch of regulated groundfish by midwater trawl vessels is minimal*, some members of the industry will contend that NMFS has underestimated this bycatch."  *Id.* (emphasis added).

The administrative record does not contain sufficient facts, information, or data to properly support any of these statements in the Decision Memorandum.   Although the Decision Memorandum does frankly acknowledge that the issue of herring trawlers killing groundfish in the closed areas has been ongoing from the time those trawlers were allowed into those areas (in 1998), it does not contain any "reports" that indicate bycatch levels in the herring trawl fishery. Nor does it contain any documentation that the defendants reviewed "the most recent observer data."   Nor does it contain any estimate "based on observer data that bycatch of regulated groundfish by midwater trawl vessels is minimal."  Indeed, despite the fact that the relevant time period extends from 1998 to 2007, the only data or information in the record that is relevant to these statements in the Decision Memorandum is observer data from parts of 2006-2007 – and even these data are incomplete.  *See* AR at 770-74; 818-27.

In point of fact, far from including any relevant "reports" or "estimations," the gaps in the record far outweigh the relevant information which could be used to support the Decision Memorandum.  As noted above, the defendants issued the rule allowing herring vessels to fish in the groundfish closed areas in 1998.  Thus, the information needed for defendants to justify their conclusion that "*bycatch of regulated groundfish by midwater trawl vessels is minimal*" would include, at a minimum, the following information for the entire period between 1998 and 2007: (1) federal observer data on groundfish bycatch in the midwater trawl fishery; (2) observer coverage levels in the midwater trawl fishery; (3) data from the Office of Enforcement on bycatch in the midwater trawl fishery; (4) federal dealer reports for midwater trawl catch; (5)

8

midwater trawl vessel trip reports; and (6) any other data on catch and bycatch that might go into such an "estimation."   With the single exception of the limited observer data from 2006-2007, none of this information appears in the record.

Finally, the record contains nothing suggesting that NMFS devoted any time whatsoever to considering the <u>permanent</u> rulemaking requested by plaintiffs.  The Decision Memorandum and letter to plaintiffs' counsel transmitting its decision only addresses the emergency rulemaking request.  *See* AR at 915.  A subsequent letter sent in response to plaintiffs' inquiries appears to suggest that NMFS considered and rejected the permanent rulemaking request as well, *see* AR at 924; however, there is nothing in the record suggesting that consideration of the permanent rulemaking actually occurred.  Indeed, the missing reports, data, and other information referenced above would be essential to such consideration.  Thus, the plaintiffs seek to compel defendants to provide the record material showing that the defendants considered plaintiff's request for permanent rulemaking.

In short, the record simply does not provide the required comprehensive documentation of all materials directly or indirectly considered or relied upon by the defendants in rejecting the plaintiffs' Petition and deciding to continue to allow adult, spawning, and juvenile groundfish to be killed in otherwise protected New England waters by herring trawlers.   Therefore, the defendants must add these materials to the record.

## ARGUMENT

**I.**    **The Fisheries Service Must File a Complete Administrative Record that Includes all Relevant Information.**

NMFS has submitted a record that omits the information, facts, and data that would be essential to any "estimation" of groundfish bycatch that was central to its decision to reject plaintiffs' October 2007 Petition. The record submitted by NMFS simply does not contain reports, data, and other information that would be needed to support such an estimate and other conclusions contained in its Decision Memorandum. Accordingly, although the defendants have dubbed the collection of documents they have provided the "administrative record," these documents fall short of a legally adequate, acceptable administrative record.

This case is based in part upon the Administrative Procedure Act ("APA"), under which a court may hold unlawful and set aside final agency action, findings, and conclusions that are arbitrary, capricious, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). Judicial review of APA claims is conducted on the basis of the record that was before the agency at the time the decision was made. *See, e.g.*, *FPC v. Transcontinental Gas Pipe Line Corp.*, 423 U.S. 326, 331 (1976). The administrative record must be "the whole record" that was actually before the agency; it must contain all relevant information upon which the decision in question was based. *See* 5 U.S.C. § 706; *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971) (review is to be based on the "full administrative record"); *Natural Resources Defense Council, Inc. v. Train*, 519 F. 2d 287, 291 (D.C. Cir. 1975) (court "shall review the whole record").

Courts often emphasize the crucial importance of reviewing the entire record, rather than one that is not complete:

> "The whole record" includes everything that was before the agency pertaining to the merits of its decision. An incomplete record must be viewed as a "fictional account of the actual decision-making process." . . . If the record is not complete, then the requirement that the agency decision be supported by "the record" becomes almost meaningless.

*Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993)

(citations omitted). This Circuit has emphasized the particular importance of close record review

in cases such as this, where the agency has engaged in an analysis of rather technical

information:

> The close scrutiny of the evidence is intended to educate the court. It must understand enough about the problem confronting the agency to comprehend the meaning of the evidence relied upon and the evidence discarded; the questions addressed by the agency and those bypassed; the choices open to the agency and those made. *The more technical the case, the more intensive must be the court's effort to understand the evidence* . . . .

*Ethyl Corp. v. Environmental Protection Agency*, 541 F. 2d 1, 36 (D.C. Cir. 1976) (emphasis

added). The *Ethyl* court further explained that the purpose of this close review of the complete

administrative record is to "enable the court to determine whether the agency decision was

rational and based on consideration of the relevant factors." *Id*.

Thus, for this Court to evaluate whether the Fisheries Service decision to deny plaintiffs'

Petition was the product of rational decision-making and based on substantial evidence, it is

essential that the administrative record consist of the "whole record" created during the decision-

making process. *Citizens to Preserve Overton Park*, 401 U.S. at 420. Accordingly, NMFS must

ensure that the administrative record contains all materials that were "before the agency at the

time the decision was made." *Environmental Defense Fund, Inc. v. Costle*, 657 F. 2d 275, 284

(D.C. Cir. 1981). The administrative record "consists of all documents and materials directly or

*indirectly* considered by agency decision makers and includes evidence contrary to the agency's

position." *Thompson v. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (citations omitted);

*accord*, *Bar MK Ranches v. Yeutter*, 994 F. 2d 735, 739 (10th Cir. 1993); *Int'l Longshoremen's*

*Assoc. v. National Mediation Bd.,* 2006 WL 197461 *3 (D.D.C. 2006) (Walton, J.).

Furthermore, defendants cannot properly limit the administrative record to documents

that the officially designated decisionmaker personally read and relied on.  Courts have

consistently rejected arguments that documents generated during the decisionmaking process can

be excluded from the record because the agency did not ultimately "rely" on such information.

*See Ad Hoc Metals Coalition v. Whitman*, 227 F. Supp.2d 134, 139 (D.D.C. 2002) (Friedman, J.)

(document not excluded "simply because defendants claim they did not 'rely' on it"); *Miami*

*Nation of Indians v. Babbitt*, 979 F. Supp. 771, 777 ("a document need not literally pass before

the eyes of the final agency decision maker to be considered part of the administrative record")

(*quoting* Clairton *Sportsmen's Club v. Penn. Turnpike Comm'n*, 882 F. Supp. 455, 464 (W.D. Pa.

1995)); *Envtl. Defense Fund v. Blum*, 458 F. Supp. 650, 661 (D.D.C. 1978) (Gesell, J.) (it is

improper "to exclude from consideration pertinent material submitted as an integral part of the

rulemaking process or otherwise located in EPA's own files" even if agency did not rely on it).

Similarly, the agency may not "skew the 'record' for review in its favor by excluding from that

'record' information in its own files which has great pertinence to the proceeding in question."

*Id.*

Plainly, then, NMFS cannot categorically exclude from the record the very facts and data

that are required to support its decision to reject the plaintiffs' Petition – information to which it

specifically referred in its "Decision Memorandum."   In this case, the defendants decided ten

years ago to allow herring trawlers to fish in areas that were otherwise closed to fishing.  Then,

in rejecting the plaintiffs' October 2007 Petition, defendants stated that they had arrived at an

"estimation" which determined any resulting bycatch of groundfish to be "minimal."  AR 912.

Yet the record proffered here by the defendants is entirely missing any such estimate, as well as any reports on bycatch from the relevant period of time or other information (such as enforcement information or dealer reports) necessary to make such an estimate. Moreover, the record simply does not contain any relevant data for nine of the ten years in question. These data are essential to any proper determination of the plaintiffs' Petition.

This exclusion of key data from the record cannot stand. If defendants reviewed these data – as they were required to do in order to arrive at a rational decision on the Petition – all of it must be included in the record. *James Madison Ltd. v. Ludwig,* 82 F. 3d 1085, 1095 (D.C. Cir. 1996) (record must include all materials compiled by the agency "that were before the agency at the time the decision was made") (internal quotations omitted); *Ad Hoc Metals Coalition*, 227 F. Supp. 2d 134, 137 (D.D.C. 2002) (same). Indeed, as noted by this Circuit, "[r]eview of less than the full administrative record might allow a party to withhold evidence unfavorable to its case..." *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984). *See also Mar. Mgmt. Inc. v. United States*, 242 F.3d 1326, 1335 & n.14 (11th Cir. 2001) (finding bad faith in government's failure to include contrary evidence in the administrative record).

Notably, NMFS has not endeavored to justify its withholding of relevant materials by asserting that they are somehow protected. Although an agency can attempt to withhold documents on the basis that they are subject to a legal privilege, to do so it must submit a privilege log identifying specific documents that have been withheld and providing specific grounds for each document. Even then, the plaintiffs are entitled to challenge those privilege determinations, and a court may find that those documents must be produced for the purposes of pending litigation. *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 861-62 (D.C. Cir. 1980) (agency bears burden of proving privilege which can be overridden by litigation

needs).  It is impermissible for NMFS to close the door to these documents at the outset by

excluding whole classes of documents – such as their estimate(s) of groundfish bycatch by

herring midwater trawl vessels and the reports, data, and other information supporting such

estimates and related conclusions – from the administrative record without asserting that they are

somehow protected.

In sum, NMFS has compiled an incomplete record because it has failed to present the

Court with the "whole" administrative record.  The "whole" administrative record should include

"all documents and materials directly or indirectly considered by agency decision-makers and

includes evidence contrary to the agency's position."  *Int'l Longshoremen's Assoc. v. National*

*Mediation Bd.*, 2006 WL *3 (D.D.C. 2006) (Walton, J.) (internal citations omitted).  Therefore,

NMFS must now be required to complete the record in this litigation so that the Court has before

it "the full administrative record" that was part of the decision-making process.  *Citizens to*

*Preserve Overton Park, Inc. v. Volpe*, 401 U.S. at 420 (1971).

## II.    Plaintiffs are Entitled to the Data and Factual Information upon which the Fisheries Service Based its Bycatch Estimation.

Plaintiffs are plainly entitled to all of the data and materials NMFS used in generating its

bycatch "estimation" – the very estimate that formed the basis for the NMFS decision to deny the

plaintiffs' Petition.  This includes all reported observer data, enforcement information, dealer

reports, trip reports, and any other factual information that NMFS used in generating the

"estimation."   As noted above, the defendants have failed to assert any claim of privilege or

protection for documents not included in the record, but any such claims of privilege would not,

in any event, extend to purely factual information.  *GE v. Johnson*, 2006 U.S. Dist. LEXIS 64907

at *13-*19 (D. D.C.); *Access Reports v. Dept. of Justice*, 926 F.2d 1192, 1194 (D.C. Cir. 1991);

*Trout Unlimited v. Lohn*, 2006 U.S. Dist. LEXIS 28679 at *13 (W.D. Wa.) ("the privilege does

not protect documents pertaining to determinations of science or fact.").  Moreover, even when a document may be somehow privileged, severable facts contained within it still must be disclosed.  *Ocean Mammal Inst. v. Gates*, 2008 U.S. Dist. LEXIS 42068 at * 30 (D. Haw.) ("Factual information that is included in a document containing predecisional and deliberative material is not protected if the factual information is severable."); *Southwest Ctr. for Biological Diversity v. Dept. of Agric.*, 170 F. Supp. 2d 931, 941 (D. Ariz. 2000) (finding that research data is not "pre-decisional"); *Natural Res. Def. Council v. Fox*, 1998 U.S. Dist. LEXIS 4575 at *8-*9 (S.D.N.Y. 1998) ("Generally, documents that are factual in nature do not qualify as privileged. Whenever possible, facts that are separable from the privileged portion of a document should be disclosed.").

The D.C. Circuit has explicitly held that an agency may not withhold data or other research material unless the agency can demonstrate that withholding the material is essential to preserve a researcher's ability to publish his findings.  *Burka v. Dept. of Health & Human Servs.*, 87 F.3d 508, 521 (D.C. Cir. 1996).  Here, the Fisheries Service has not demonstrated any intent to publish relevant data in a peer-reviewed journal.  Additionally, the disclosure of some of the observer data for 2006 and 2007 waives the argument that the Fisheries Service must protect the data in order to preserve publication rights.  Therefore, plaintiffs are entitled to all relevant survey and observer data from the period 1998 – 2007 that was before NMFS at the time the "estimation" was generated.

Furthermore, most fishery models produce a range of estimates from which the policy maker must select the best estimate.[5]  While the selection of the best estimate may be a policy

---

[5] The record is silent with respect to the process by which defendants actually determined that bycatch of groundfish by herring trawl vessels in closed areas is "minimal."  For purposes of this motion and memorandum, the plaintiffs are assuming that the defendants employed some sort of model or mathematical calculation in arriving at that determination.

decision, plaintiffs are entitled to any and all calculations, data, and other statistical information that was before the Secretary at the time the "estimation" was made. This is because "numbers are the result of the deliberative process. They are not the process." *Carter v. Dept. of Commerce*, 186 F. Supp. 2d 1147, 1157 (D. Or. 2001) (finding that under FOIA plaintiffs were entitled to disclosure of adjusted census figures even though the Secretary decided not to adopt them as the official census). Thus, plaintiffs are at minimum entitled to the raw data and any model outputs upon which defendant's decision on the Petition was based. As noted above, these include the following for each year between 1998 and 2007: (1) federal observer data on groundfish bycatch in the midwater trawl fishery; (2) observer coverage levels in the midwater trawl fishery; (3) data from the Office of Enforcement on bycatch in the midwater trawl fishery; (4) federal dealer reports for midwater trawl catch; (5) midwater trawl vessel trip reports; and (6) any other data on catch and bycatch that might go into such an "estimation."

### III.    The Fisheries Service Must Include in the Administrative Record Materials on Which It Based Its Decision to Deny Permanent Relief.

The defendants were required to provide the plaintiffs a complete response to the Petition, which sought both emergency and permanent relief. See *Fund for Animals v. Babbitt*, 903 F. Supp. 96, 115-16 (D.D.C 1995) ("the right to petition for rulemaking entitles the petitioning party to a response on the merits of the petition"). Indeed, the APA requires the defendants to "fully and promptly consider" the Petition. *WWHT, Inc. v. F.C.C.*, 656 F.2d 807, 813 (D.C. Cir. 1981). The defendants did not provide such a response here.

Indeed, as noted above, the record contains nothing suggesting that NMFS devoted any time to considering the permanent rulemaking requested by plaintiffs. The Decision Memorandum and letter to plaintiffs' counsel transmitting its decision only addresses the

emergency rulemaking request.  *See* AR at 915.  A subsequent letter sent in response to plaintiffs' inquiries appears to suggest that NMFS considered and rejected the permanent rulemaking request as well. *See* AR at 924.  But there is nothing in the record suggesting that consideration of the permanent rulemaking actually occurred.   If the defendants actually considered the plaintiffs' request for permanent rulemaking, they must include in the record all materials related to that consideration.  *James Madison Ltd. v. Ludwig*, 82 F. 3d 1085, 1095 (D.C. Cir. 1996).

## **CONCLUSION**

For the foregoing reasons, because the Fisheries Service has failed to file a complete record, the plaintiffs respectfully request that this Court compel the Fisheries Service to produce a complete administrative record within 30 days.


Dated:  July 22, 2008.

Respectfully submitted,


/s/ Stephen E. Roady
_____
Stephen E. Roady
D.C. Bar. No. 926477
Roger Fleming
Maine Bar No. 8905
Earthjustice
1625 Massachusetts Avenue, N.W.
Washington, D.C.  20036
202-667-4500 Telephone;  202-667-2356 Fax

Counsel for the Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
**MIDCOAST FISHERMEN'S**                 )
**ASSOCIATION, et al.,**                 )
                                        )
            **Plaintiffs,**              )
                                        )
            **v.**                       )        **Civil Action 07-02336 (HHK)**
                                        )
**CARLOS M. GUTIERREZ, et al.,**         )
                                        )
            **Defendants.**              )
_____)

**[ PROPOSED ] ORDER**

Upon consideration of plaintiffs' motion to compel completion of the administrative record and the memorandum in support, as well as defendants' opposition to that motion, it his hereby ORDERED that the plaintiffs' motion is GRANTED.

FURTHER ORDERED that, within thirty (30) days after entry of this Order, defendants shall complete the administrative record by filing with the Court and with plaintiffs all facts, data, and information directly or indirectly considered by defendants in denying the plaintiffs' October 2007 Petition seeking emergency and permanent relief that prohibits herring trawl fishing in areas closed to fishing for groundfish in ocean waters off New England. These materials should include all information related to the defendants' estimate of bycatch of groundfish by herring trawl vessels in such closed areas for the period 1998-2007.   SO ORDERED this _____ day of _____, 2008.

                                    _____
                                    **HENRY H. KENNEDY, JR.**
                                    **UNITED STATES DISTRICT JUDGE**