RONALD J. TENPAS
Assistant Attorney General
Environment & Natural Resources Division
JEAN WILLIAMS, Chief
REBECCA J. RILEY, Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7369
Washington, D.C. 20044-7369
Telephone: (202) 305-0202
Facsimile: (202) 305-0275

Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MIDCOAST FISHERMEN'S ASSOCIATION, et al., | Case No. 07-2336 (HHK) |
| Plaintiffs, | **FEDERAL DEFENDANTS' OPPOSITION TO MOTION TO COMPEL COMPLETION OF THE ADMINISTRATIVE RECORD** |
| v. | |
| CARLOS M. GUTIERREZ, et al., | |
| Defendants. | |

Defendants hereby respond to the Plaintiffs' motion to compel the complete administrative record. Plaintiffs now have the complete administrative record and have not rebutted the strong presumption of regularity that attaches to agency certification of administrative records. The documents Plaintiffs seek are already in the administrative record certified by NMFS and filed with the Court. Accordingly, this Court should deny Plaintiffs' motion.

//

//

## BACKGROUND

**A. Statutory Background**

In 1976, Congress passed the Magnsuon Act, based on that recognition that "[c]ertain stocks of fish have declined to the point where their survival is threatened, and other stocks of fish have been so substantially reduced in number that they could become similarly threatened . . . ." 16 U.S.C. § 1801(a)(2). The Magnuson Act establishes a comprehensive system for the "conservation and management" of domestic marine fisheries. 16 U.S.C. § 1801(b)(1). "Congress' primary goal in passing the [Magnuson Act] was to address overfishing and mandate the sustainable conservation of threatened fish stocks." *Legacy Fishing Co. v. Gutierrez*, No. 06-0835 (JR), 2007 WL 861143, *2 (D.D.C. March 20, 2007), rev'd, 510 F.3d 328 (D.C. Cir. 2007). To accomplish this goal, the Magnuson Act established eight regional fishery management councils that are responsible for preparing fishery management plans ("FMPs") for threatened fisheries.

Fishery management councils are quasi-legislative bodies made up of federal, state, and territorial fishery management officials, participants in commercial and recreational fisheries, and other individuals with scientific experience or training in fishery conservation and management. 16 U.S.C. § 1852(b). Council business is conducted at public meetings and through written procedures established by each Council, subject to statutory requirements. 16 U.S.C. § 1852(h),(i); *see also* 50 C.F.R. § 600.135.

Generally speaking, FMPs or amendments thereto prepared by the councils are submitted to the Secretary of Commerce through NMFS, the Secretary's designee, along with any proposed regulations the council "deems necessary or appropriate" to implement the FMP or FMP amendment. 16 U.S.C. §§ 1852(h)(1), 1853(c). Both the FMP or amendment and any necessary implementing regulations are subject to public review and comment. 16 U.S.C. § 1854(a)(1), (b)(1).

NMFS may disapprove the FMP or amendment in whole or in part only to the extent it is inconsistent with applicable law, and may not substantially modify plans submitted by the Council. 16 U.S.C. § 1854(a)(3). If approved, the FMP or amendment is then implemented and enforced by NMFS. 16 U.S.C. § 1854(a), (b). There is a strong presumption that fishery management measures should be developed and implemented through the Council process, rather than unilaterally as requested by Plaintiffs in their petition for rulemaking. *See* 16 U.S.C. § 1852(b). The circumstances in which NMFS may implement fishery regulations unilaterally are narrow. NMFS is authorized to prepare an FMP or FMP amendments: if the relevant council fails to act in a reasonable time in circumstances in which fishery conservation and management is required; if NMFS disapproves of an FMP or FMP amendment prepared by a council and the council fails to submit an adequate revised plan or amendment; or, if there is an emergency situation or need to temporarily implement measures on an interim basis while the relevant council develops an FMP or amendment. 16 U.S.C. at §§ 1854(c); 1855(c).

**B. Factual Background**

On February 23, 2006, the New England Fishery Management Council, in consultation with NMFS, issued a Framework Adjustment to the Northeast Multispecies ("Groundfish") FMP. AR 48-125. This plan contained management measures to address groundfish bycatch in the Atlantic herring fishery. AR 58. The plan included a catch cap for haddock, the primary groundfish bycatch, as well as an incidental catch allowance for other regulated groundfish. *Id.* The plan did not exclude midwater trawl vessels from closed areas. AR 60.

On October 15, 2007, NMFS received a petition from Plaintiffs requesting emergency and permanent rulemaking that would exclude midwater trawl vessels from closed areas. AR 694-768. In response to this petition, NMFS reviewed bycatch data collected since the issuance of the

February 2006 framework adjustment. AR 911. These data showed that the bycatch caps set by the framework adjustment had not been exceeded. *Id.* In light of these data and NMFS's narrow authorization to prepare FMP amendments on its own, NMFS concluded that emergency rulemaking and permanent rulemaking were not warranted. AR 912.

On December 28, 2007, Plaintiffs filed this action challenging NMFS's denial of their petition for rulemaking. Dkt. No. 1. On April 16, 2008, NMFS filed the complete administrative record. Dkt. No. 14. Plaintiffs now move the Court to compel addition of three categories of documents they believe were excluded from the administrative record. Plaintiffs seek:

> 1. The groundfish bycatch "estimation" referenced in the defendants' "Decision Memorandum" denying the plaintiffs' October 2007 Petition . . .;
>
> 2. The data and factual information upon which this "estimation" and related conclusions are based; and
>
> 3. Material showing that defendants actually considered plaintiffs' request for permanent rulemaking.

Pls' Br. at 1. NMFS denied Plaintiffs' petition for rulemaking after reviewing bycatch data that are found in the administrative record. See AR 416-448, 818-827, 903-910. These data show that the caps set in the 2006 framework adjustment have not been exceeded and that no unilateral action by NMFS was necessary or justified. This was the primary basis for NMFS's decision. In addition, NMFS's letter to Plaintiffs, AR 67, shows that NMFS considered Plaintiffs' request for permanent rulemaking. Thus, the information Plaintiffs seek in their motion to compel is already found in the administrative record. Accordingly, this Court should deny Plaintiffs' motion.

## **ARGUMENT**

Section 706 of the Administrative Procedure Act ("APA") directs a court reviewing an agency decision to "review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. Review of the "whole record" under section 706 "is to be based on the full administrative record that

was before the [agency decisionmakers] at the time [they] made [their] decision." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971). The "whole record" includes "all documents and materials that the agency 'directly or indirectly considered.'" *Maritel, Inc. v. Collins*, 422 F. Supp. 2d 188, 196 (D.D.C. 2006) (quoting *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir.1993)). As such, the administrative record "should not include materials that were not considered by agency decisionmakers." *Pacific Shores Subdivision v. U.S. Army Corps of Engineers*, 448 F. Supp. 2d 1, 4 (D.D.C. 2006) (internal citation and quotation mark omitted).

Here, NMFS has provided the complete administrative record for the denial of a petition for rulemaking challenged in this case. Without a showing of clear evidence to the contrary, NMFS is entitled to a strong presumption of regularity that the record has been properly designated. *Pacific Shores Subdivision*, 448 F. Supp. 2d at 5; *Bar MK Ranches*, 994 F.2d 735, 740. To overcome such a presumption, Plaintiffs must show that the record fails to explain the administrative action and therefore frustrates effective judicial review, that the agency intentionally excluded evidence adverse to its decision, or that the agency acted in bad faith. *See San Luis Obispo Mothers for Peace v. Nuclear Regulatory Comm'n*, 751 F.2d 1287, 1326-27 (D.C. Cir. 1984). Plaintiffs fail to show that any of these rare exceptions apply in this case.

Plaintiffs seek: (1) the groundfish bycatch "estimation" referenced in the decision memo, (2) the data and factual information this "estimation" relies upon, and (3) material showing that Defendants actually considered Plaintiffs' request for permanent rulemaking. Pls' Br. at 1. The materials Plaintiffs seek are already in the administrative record. <u>See</u> <u>e.g.</u>, AR 416-448, 818-827, 903-910, 924.

First, the groundfish bycatch data that support NMFS's estimation that the caps set in the last framework adjustment had not been exceeded is found in the record. NMFS used the term

"estimation" in a more general sense than Plaintiffs appear to understand. There is no single "estimation" data point upon which NMFS relied. Rather, there are data throughout the record that shows that the bycatch caps had not been exceeded. For example, AR 903-910 contains the quota reports of haddock bycatch in the herring fishery from May 2006-November 2007. AR 818-827 contains NMFS mid-water trawl observer data from 2006 to May 2007, which also reflects bycatch. AR 417-448 contains statistics derived from available dealer electronic and vessel log data that show the amount of bycatch from May-July 2007 in the multispecies FMP. These data span the time period from the framework adjustment to the decision, which NMFS considered to be the only relevant time period given its limited authority to unilaterally implement fishing regulations. NMFS did not consider data prior to the framework adjustment for this reason. Second, the letter at AR 924 shows that NMFS considered Plaintiffs' request for permanent rulemaking.

Thus, the categories of documents Plaintiffs seek are already in the administrative record. To the extent Plaintiffs believe that the materials submitted do not support NMFS's decision, that argument should be raised during briefing on the merits.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion to compel the complete administrative record.

Dated this 29th day of August, 2008.                Respectfully submitted,


                                                   RONALD J. TENPAS
Assistant Attorney General
Environment & Natural Resources Division
JEAN WILLIAMS, Section Chief


 /s/ Rebecca J. Riley
REBECCA J. RILEY, Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife and Marine Resources Section
P.O. Box 7369
Washington, DC 20044-7369
(202) 305-0202
(202) 305-0275 (fax)