**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____ )
                                )
**MIDCOAST FISHERMEN'S**          )
**ASSOCIATION, et al.,**           )
                                )
              **Plaintiffs,**      )
                                )
          **v.**                  )      **Civil Action No. 07-2336 (HHK/JMF)**
                                )
**CARLOS M. GUTIERREZ, et al.,**   )
                                )
              **Defendants.**      )
_____ )


**MEMORANDUM OPINION**

This case was referred to me by Judge Kennedy for the resolution of the instant

Motion to Compel Completion of the Administrative Record [#22].

I.        Background.

On October 12, 2007, plaintiffs, the Midcoast Fishermen's Association and the

Northwest Atlantic Marine Alliance, petitioned the Secretary of Commerce "to take

emergency action to address continued overfishing in the Northeastern multispecies

fisheries by excluding midwater trawl vessels from groundfish closed areas."

Administrative Record ("AR") at 700.  Specifically, they demanded that the Secretary

> (1) exercise his authority under 16 U.S.C. § 1855(c) to
> promulgate emergency regulations and interim measures
> necessary to exclude midwater trawl vessels from all year
> round and seasonal groundfish closed areas implemented
> beginning in 1994 to reduce groundfish mortality and
> protect juvenile and spawning ground fish; and

(2) exercise his authority under 16 U.S.C. § 1855(d) to
initiate rulemaking designed to make such protections
permanent.

AR at 695-96.

On November 1, 2007, Patricia Kurkut, Regional Administrator, National Marine

Fisheries Service, transmitted a memorandum to William T. Hogarth, Assistant

Administrator for Fisheries, in which she concluded:

> Recent reports of haddock bycatch in the herring fishery
> prompted renewed analysis of the fishery and resulted with
> the Council developing Framework Adjustment 43 (FW43)
> to the NE Multispecies Fishery Management Plan in 2006.
> This framework, which was implemented on August 15,
> 2006, created a herring exempted fishery and established an
> incidental catch cap for haddock and a bycatch allowance
> for other regulated groundfish when fishing under this
> exemption.  To date, there have been no indications that
> this cap has been caught.  Although observer coverage in
> this fishery is not as high as the Council requested in FW43
> (20% or more), reports have not indicated an increase in
> bycatch in this fishery over levels previously
> considered.  The Petitioners provide no significant new
> information to justify emergency action at this time.
> Note that we have reviewed the most recent observer data
> and found no cause for concern or belief that an emergency
> exists.

AR at 911.

Kurkut also indicated that her recommendation to deny the petition would be

controversial because members of the fishing industry would "contend, despite absence

of supporting data, that continued access to the closed areas allows midwater trawl

vessels to have a significant negative impact on the recovery of groundfish

stocks."  AR at 912.  Nevertheless, she concluded that the "substance of the petition" is

not sufficient and recommended its denial.  Id.  The Regional Administrator concurred.

Id.

2

Plaintiffs filed suit in this Court on December 28, 2007 seeking review of the agency's decision.  On April 16, 2008, George Darcy, Ms. Kurkut's Deputy, filed the administrative record, certifying that it was the administrative record for the decision "denying petition for rulemaking to prohibit midwater trawl fishing in Northeastern (NE) multispecies closed areas."  AR at 2.  With the exception of the initial documents, listed in the Main Index to the Administrative Record, which are regulatory materials pertaining to Framework Adjustments 18 and 43, all the documents that are in the record were created after June 22, 2006 and before Kurkut's decision of November 1, 2007. This is consistent with Kurkut's assertion in the second paragraph of her recommendation (reproduced above) that she was relying on data created between August 15, 2006 and the date of her recommendation. AR at 911.

## II.     Analysis.

Defendant's certification of the administrative record is entitled to a strong presumption of regularity.  Sara Lee Corp. v. Am. Bakers Assoc., 252 F.R.D. 31, 34 (D.D.C. 2008); Fund for Animals v. Williams, 245 F. Supp. 2d 49, 56-57 (D.D.C. 2003) ("It is the agency that did the 'considering' and that therefore is in a position to indicate initially which of the materials were 'before' it – namely, were 'directly or indirectly considered.") vacated on other grounds by 428 F.3d 1059 (D.C. Cir. 2005)").  "For a court to supplement the record, the moving party must rebut the presumption of administrative regularity and show that the documents to be included were before the agency decisionmaker."  Pac. Shores Subdivision Cal. Water Dist. v. U.S. Army Corp. of Engineers, 448 F. Supp. 2d 1, 6 (D.D.C. 2006).  To rebut the presumption, the moving party cannot rely on mere speculation, but must introduce concrete evidence to "prove

that the documents were before the actual decisionmakers involved in the determination."
<u>Sara Lee</u>, 252 F.R.D. at 34.

Plaintiffs essentially make two arguments in their memorandum.  The first is that,
despite the protestation by the defendant that the record is complete, the final decision
itself indicates that the decision maker relied directly or indirectly on other data not in the
record.  In support, plaintiffs seize on the language in the Decision Memorandum, AR at
911-12, which states that "*reports* have not indicated an increase in bycatch" and refers to
"the *estimation* based on *observer data*" to argue that the Decision Memorandum
explicitly refers to documents that are not in the Administrative Record.  <u>See</u>
<u>Memorandum in Support of Plaintiffs' Motion to Compel Completion of the</u>
<u>Administrative Record</u> ("Pls. Mem.") [#22] at 8 (citing AR at 911-12) (emphasis added).
The full sentence from which the quoted phrases above were excerpted reads:  "Despite
the estimation based on observer data that bycatch of regulated groundfish by midwater
trawl vessels is minimal, some members of the industry will contend that NMFS has
underestimated this bycatch."  AR at 912.  The word "estimation" refers not to an actual,
single document but summarizes the information in the third full paragraph on the first
page leading to the conclusion that the data since August 15, 2006 does not show that the
caps imposed have been exceeded.  Similarly, the word "data" refers to that information,
i.e., the data since August 15, 2006 which supports the conclusion that the caps have not
been exceeded.

It is not contested that the Administrative Record contains the observer data to
which the author referred.  Plaintiffs are really arguing that it does not contain all the

observer data that they believe the defendant should have considered before reaching the conclusion it did.

Second, plaintiffs argue that it is impossible that the agency only considered the documents in the record because those documents only cover a two year period, and this issue has existed since 1998. Pls. Mem. at 12-13. Plaintiffs believe that the agency was required to review all of the available data starting in 1998 in order to support its decision, and therefore, the agency must have reviewed that information. Id. Rather than present concrete evidence that demonstrates that the agency did in fact rely on that data, the plaintiffs basically make a merits argument in a discovery motion: that the agency's failure to review documents for the period prior to the 2006 Framework Adjustment would be arbitrary and capricious. The Court is not prepared to express an opinion on the propriety of the defendant's selection of data. Rather, the Court is limited at this time to determining what data the defendant in fact selected. Here the defendant argues and the Administrative Record reflects that defendant believed that the issue of bycatch from herring trawlers was considered and addressed in the 2006 Framework Adjustment, and therefore, the agency only considered data collected after the adjustment when evaluating the proposed rulemaking. I appreciate that the plaintiffs disagree with the defendant's characterization of the scope of the adjustment, but that is an issue to be considered when evaluating the merits of this case, not the veracity of the defendant's certification.

In the alternative, plaintiffs argue that the Court should supplement the record with extra-record evidence. Supplementing the record with what all agree are documents the agency did not consider does not perfect the administrative record by supplying what is missing. It creates a new ersatz conglomeration consisting of what the decision maker

considered and material that plaintiffs insisted it should have.   The Court's doing so violates the principle that judicial review of administrative action must be based on the records before the agency, not a new "record" created in the court.  <u>Camp v. Pitts</u>, 411 U.S. 138, 142-43 (1973).  "We do not allow parties to supplement the record 'unless they can demonstrate unusual circumstances justifying a departure from this general rule.'" <u>Am. Wildlands v. Kempthorne</u>, 530 F.3d 991, 1002 (D.C. Cir. 2008) (quoting <u>Tex. Rural Legal Aid, Inc. v. Legal Servs. Corp.</u>, 940 F.2d 685, 698 (D.C. Cir. 1991)).  To supplement the record, plaintiffs must demonstrate that the case falls within one of the eight exceptions outlined in <u>Esch v. Yeutter</u>, 876 F.2d 976, 991 (D.C. Cir. 1989).  <u>See Calloway v. Harvey</u>, No. 04-CV-239, 2008 WL 5096919, at *6 (D.D.C. Dec. 4, 2008); <u>Sara Lee</u>, 252 F.R.D. at 33.

Attempting to avail themselves of several of these exceptions, plaintiffs argue that (1) the agency deliberately or negligently excluded documents that were adverse to its decision; (2) the Court needs important background information to adequately decide this case; and (3) the defendant has not provided adequate information regarding its decision on the permanent rulemaking.  Pls. Reply at 5-9; <u>see also</u> <u>James Madison Ltd. By Hecht v. Ludwig</u>, 82 F.3d 1085, 1095 (D.C. Cir. 1996) (recognizing the three exceptions upon which plaintiffs attempt to rely).

First, plaintiffs' real concern is about the completeness of the data set that the agency chose to consider when it denied plaintiffs' request for a rulemaking.  They generally assert that information from the pre-2006 time-frame may have been adverse to the agency's conclusion, but this is not a case where the agency blatantly ignored a specific document that was readily available and directly on point.   <u>See e.g.</u>, <u>Kent</u>

County, Del. Levy Court v. EPA, 963 F.2d 391, 396 (D.C. Cir. 1992) (court permitted supplementing the record where EPA ignored specific adverse documents in its files that pertained to the regulatory program at issue and instead based its decision on a supportive document from an analogous regulatory program).  Nor is this a case where the agency cherry-picked documents that support its position and ignored those that did not.  Instead, it is clear beyond all question that the agency considered only one chronological portion of all the data and specifically stated what data it was considering.  The agency cannot possibly be accused of hiding information contrary to its conclusion, whether deliberately or negligently.  It drew a line based on time, not on the contents or conclusions of the source materials – whether that line was justified is an issue to be taken up later when this case is evaluated on its merits.

Second, plaintiffs argue that the Court must supplement the record with "background" information in order to determine whether the agency considered all the relevant factors.  See James Madison, 82 F.3d at 1095.  Plaintiffs argue that this data will shed light on factors that were not considered by the agency.  See Am. Wildlands v. Norton, No. 05-CV-1043, 2006 WL 2780702, at *1 (D.D.C. Sept. 21, 2006) (declining to supplement the record with letters that discussed issues that were considered by the agency).  But, Kurkut clearly indicated that the agency only considered the bycatch data for the period from August 15, 2006 to the date of the decision in deciding that the bycatch caps were not exceeded. AR 911.  See Defs. Opp. at 3-4.  Supplementing the record with the bycatch data from an earlier period will not provide any "background" useful to resolving the case.  No matter what "background" is provided, the issue remains the same: did the agency err by only considering the data that it did?

Finally, plaintiffs argue that the Administrative Record does not contain any information that explains why the agency decided to decline plaintiffs' request for a permanent rulemaking.  Pls. Reply at 9.  However, the agency's decisions suggest that it denied the permanent rulemaking request for the same reasons that it denied the emergency request – because no new information was presented to the agency that caused it to question Framework Adjustment 18, which initially allowed midwater herring trawlers.  See AR at 911-24.  There is sufficient information in the record for the Court to determine what process the agency followed in reaching its conclusion.  Thus, judicial review will not be frustrated by maintaining this record in its current state.

Limiting the record to what the agency considered does not impede the prosecution of plaintiffs' complaint about the agency's action; it advances it.  Plaintiffs' argument—that the agency should have considered more than the most recent data—must be based on the existing record for the argument is that failing to consider anything but the most recent data rendered the agency's conclusion arbitrary and capricious.  The validity of that argument rises and falls on what the agency considered with plaintiffs' pointing to why that limited consideration was illogical and unreasonable.  On the other hand, and ironically, supplementing the actual record with more information that the agency did not consider may prove that the agency's decision was correct when one considers the new supplemented record which the agency admittedly did not consider.  If that happens, plaintiffs' motion may defeat their own case.

III.     Conclusion.

As plaintiffs have not demonstrated that the record as certified is incomplete, and there being no basis upon which to supplement the administrative record with information the agency did not consider, plaintiffs' motion will be denied.

An Order accompanies this Memorandum Opinion.


Date:   December 30, 2008                           _____/S/_____
                                                    JOHN M. FACCIOLA
                                                    U.S. MAGISTRATE JUDGE