**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MIDCOAST FISHERMAN'S ASSOCIATION,** *et al.*, ) ) ) ) | |
| **Plaintiffs,** ) ) | |
| **v.** ) ) | **Civil No. 07-2336 (RCL)** |
| **REBECCA BLANK, in her official capacity as Acting Secretary of Commerce,** *et al.*, ) ) ) | |
| **Defendants.** ) ) | |

<u>**MEMORANDUM OPINION**</u>

Defendants object to the report and recommendation ("R&R") of Magistrate Judge Facciola, ECF No. 49, recommending that this Court deny the cross-motions for summary judgment *pendente lite* and remand the case. ECF No. 56. Because the defendant agency has taken actions which render this case moot, the Court overrules the R&R and dismisses the case.

## I.     BACKGROUND[1]

### A.     The Regulatory Regime

The National Marine Fisheries Service ("NMFS" or "the Service")—part of the National Oceanic and Atmospheric Administration, and, in turn, the Department of Commerce—regulates United States fisheries. *See* Magnuson-Stevens Fishery Conservation & Management Act ("MSA"), 16 U.S.C. §§ 1801 *et seq.* NMFS discharges its responsibilities through subsidiaries known as "regional fishery management councils," such as the New England Fishery

---

[1] This opinion will only review issues relevant to resolve the pending objections. For a more detailed discussion of the background to this case, see Judge Facciola's two earlier opinions. R&R 1–14; *Midcoast Fishermen's Ass'n v. Gutierrez*, 592 F. Supp. 2d 40, 42–43 (D.D.C. 2008).

Management Council ("NEFMC" or "the Council").  § 1852(a)(1)(A).  Each regional council is "required to implement congressional policies in its region by developing a fishery management plan ('FMP'), as well as necessary amendments thereto." *Fishing Co. of Alaska, Inc. v. Gutierrez*, 510 F.3d 328, 330 (D.C. Cir. 2007) (citing § 1852(h)(1)). Each council must also "propose[] regulations to implement the FMP" to the Secretary of Commerce, who "must then review the proposed regulations" and either "return the regulations to the Council with proposed revisions" or "publish the regulations for comment in the Federal Register" and, after notice and comment, must ultimately "promulgate final regulations."  *Id.* (citing §§ 1853(c), 1854(b)(1)(A)– (B), (b)(3)). The Secretary is "bound by the judicial review provisions of the Administrative Procedure Act including the requirement that his actions not be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Id.* (citing § 1855(f); 5 U.S.C. § 706(2)(A)).

**B.     Regulatory History**

Congress has embraced the goal of minimizing, to the extent practicable, quantities of "bycatch"—fish caught by fisherman attempting to catch other species which are not kept but are nevertheless dead or dying when returned to the ocean.  *See Fishing Co.*, 519 F.3d at 330 (citing 16 U.S.C. § 1801(c)(3)); *see also* 16 U.S.C. § 1851(a)(9) ("Conservation and management measures shall, to the extent practicable, (A) minimize bycatch and (B) to the extent bycatch cannot be avoided, minimize the mortality of such bycatch."); R&R 2 & n.1. This case is about

protecting New England (NE) multispecies [2] fish ("groundfish") against bycatch-induced overfishing.[3] R&R 3.

In the early 1990s, excessive groundfish bycatch led the Service, at the Council's request, to close areas in the New England fishery to any fishing gear capable of catching groundfish. *See* Fishery Conservation & Management: Northeast Multispecies, 59 Fed. Reg. 63,926 (Dec. 12, 1994), amended 60 Fed. Reg. 3,102 (Jan. 13, 1995); *see also* NE Multispecies Fishery, Amendment 7, 61 Fed. Reg. 27,710–50 (May 31, 1996) (continuing and expanding closures).  In the following decade, the Service—again, at the Council's request—relaxed this ban.  In 1998 the Service implemented Framework Adjustment 18, allowing herring and mackerel fishers employing mid-water trawl gear[4] to fish in the previously closed areas subject to a one-percent groundfish bycatch limit and other conditions.  *See* Framework Adjustment 18, 63 Fed. Reg. 7,727 (Feb. 17, 1998), 50 C.F.R. Part 648. And in 2006 the Service implemented Framework Adjustment 43 which further modified the bycatch restrictions on herring fishers by setting a 0.2-percent haddock catch cap, establishing an exempted herring fishery, and making other changes. Framework Adjustment 43, 71 Fed. Reg. 46,871 (Aug. 15, 2006), 50 C.F.R. Part 648.

### C.    Plaintiffs' Petition

In 2007, plaintiffs petitioned the Secretary of Commerce seeking emergency and permanent rulemaking, pursuant to 16 U.S.C. § 1855(c) and (d), to exclude midwater trawl vessels from closed areas.   Petition for Immediate and Permanent Rulemaking to Protect

---

[2] The term "multispecies" includes "Atlantic cod, witch flounder, American plaice, yellowtail flounder, haddock, pollock, winter flounder, windowpane flounder, redfish, white hake, Atlantic halibut, and Atlantic wolfish."  50 C.F.R. § 648.2.

[3] The term "overfishing" is defined as "a rate or level of fishing mortality that jeopardizes the capacity of a fishery to produce the maximum sustainable yield on a continuing basis."  16 U.S.C. § 1802(34).

[4] "Midwater trawl gear means trawl gear that is designed to fish for, is capable of fishing for, or is being used to fish for pelagic species, no portion of which is designed to be or is operated in contact with the bottom at any time.  The gear may not include discs, bobbins, or rollers on its footrope, or chafing gear as part of the net."  50 C.F.R. § 648.2.

Groundfish from Midwater Trawl Fishing in Northeastern Groundfish Closed Areas ("Petition"),
Oct. 12, 2007, ECF No. 1-1.  The petition musters evidence purporting to demonstrate that
bycatch levels by these vessels are exceeding the limits set by Framework Adjustments 18 and
43, Petition 10–13, and that the agency's data-collection system is unreliable because it
systematically underreports bycatch, Petition 13–17.

### D.    NMFS' Rejection

The Service promptly rejected the petition.  Regional Administrator Patricia Kurkul
reviewed it, and transmitted a memoranda to William Hogarth, Assistant Administrator for
Fisheries, recommending denial on the grounds that there "have been no indications that [the
catch-cap imposed by Framework Adjustment 43] has been caught" and "Petitioners provide no
significant new information to justify emergency action at this time." Administrative Record[5]
("AR") 911–12; *see also* R&R 13.  Mr. Hogarth sent a letter to petitioners denying their petition,
noting that NEFMC had "considered prohibiting midwater trawls in these closed areas before,
and has determined that the bycatch of NE multispecies was not sufficient to justify this action,"
and that "observer data available continue to suggest that bycatch levels are within the range
considered acceptable by the Council."  AR 915. Further, the letter explained that the petition did
"not contain significant new information that demonstrates an emergency in the fishery."  *Id.*

### E.    Judge Facciola's Report and Recommendation

Plaintiffs filed suit and, in 2010, ruling on cross-motions for summary judgment,
Magistrate Judge Facciola found that the Service's rejection may have been arbitrary and
capricious in violation of the APA.  R&R 22. "[T]he petitioners and the agency passed like ships
in the night," he concluded, because "the agency relied on the very data called into question by

---

[5] Defendants filed an Administrative Record on digital CD. *See* Notice of Filing Administrative Record, ECF No.
15.

plaintiffs for its decision to deny the Petition, without any explanation as to why it found the data sufficient and worthy of reliance."  R&R 19, 22.  Judge Facciola recommended that the cross-motions for summary judgment be denied *pendente lite* while the matter was remanded to the Service to explain "why it rejected the assertion by petitioners that the bycatch estimates are unreliable and cannot serve as the premise of the refusal to prohibit midwater trawling by herring boats in the closed areas."  R&R 22.

F.     Subsequent Agency Actions

In 2009, the Council began considering an amendment to its FMP regarding the management of midwater trawlers in groundfish closed areas.  *See* Defs.' Objections 39–40; Defs.' Reply 9.  In the course of the preliminary rulemaking procedures, the Council formally considered a range of options, including the one plaintiffs sought in their petition (*i.e.* a ban on midwater trawlers in groundfish closed areas).  *See* NEFMC, Final Amendment 5 to the FMP for Atlantic Herring Including a Final Environmental Impact Statement ("Amendment 5 EIS") at xii–xiii, 95–96, ECF No. 65-1. The Council did not endorse that proposed method, and instead recommended that the Service promulgate a rule prohibiting such vessels from fishing groundfish closed areas without an NMFS-approved observer on board and requiring that they bring fish aboard to be available for sampling and inspection.  *Id.* at 93–94.  The Council explained that while "groundfish bycatch is not considered to be a significant problem, [the Council] believes that efforts to further minimize the occurrence of groundfish bycatch are necessary at this time due to the recent (overfished) status of some important groundfish stocks."  *Id.* at 95.  It explained that its preferred alternative for addressing this problem would both "allow the herring midwater trawl fishery to operate in the groundfish closed areas but ensure that monitoring and sampling are maximized based on measures that already have proven to be

effective." *Id.* at 95.  On June 3, 2013, the Service issued a proposed rule adopting the Council's recommendation. Fisheries of Northeastern United States, 78 Fed. Reg. 33020 (Jun. 3, 2013); *see also id.* at 33,033 (noting that the proposed rule was chosen after considering and rejecting several alternatives, including the prohibition method favored by plaintiffs).  Public comments on the proposed rule are due July 18, 2013. *Id.*

## II.   LEGAL STANDARD

This Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1); LCvR 72.3(c); *see also Winston & Strawn*, *LLP v. FDIC*, 841 F. Supp. 2d 225, 228 (D.D.C. 2012).

## III.   ANALYSIS

Defendants object to the R&R.  First, they argue the case has become moot because of subsequent agency actions.  Def.'s Objections 39–41; Def.'s Reply 8–9; *see also* Def.'s Notice of Recent Developments (adding to the original mootness argument with reference to subsequent agency actions); Def.'s Notice of Publication of Proposed Rule Implementing Amendment 5, ECF No. 67 (same). Second, they argue that Judge Facciola applied an insufficiently deferential standard in ruling on the APA question.  Def.'s Objections 13–15; Def.'s Reply 7–8.  And third, they argue that, even under the less deferential standard, the agency's denial of the petition was adequately supported.  Def.'s Objections 15–36.  Because the Court finds that agency actions have made the case moot, it need not address the second and third objections.

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."  *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726–27 (2013) (some internal quotation marks omitted).   "Corrective action by an agency is one type of

subsequent development that can moot a previously justiciable issue." *Natural Res. Def. Council, Inc. v. U. S. Nuclear Regulatory Comm'n*, 680 F.2d 810, 814 (D.C. Cir. 1982). "The initial 'heavy burden' of establishing mootness lies with the party asserting a case is moot, but the opposing party bears the burden of showing an exception applies." *Honeywell Int'l, Inc. v. Nuclear Regulatory Comm'n*, 628 F.3d 568, 576 (D.C. Cir. 2010) (internal citations omitted).

Here, the agency's subsequent actions have given plaintiffs the most they would be entitled to if they won this case.  The complaint lists two requested forms of equitable relief: (1) an order that NMFS "reconsider its decision not to take immediate action to issue emergency regulations and interim measures to prohibit the use of midwater trawl fishing gear in New England groundfish closed areas"; and (2) an order that NMFS "initiate rulemaking proceedings designed to permanently prohibit vessels from fishing with midwater trawl fishing gear in New England groundfish closed areas." *See* Am. Compl. 28, ECF No. 11.  But, even if the Court found the agency's rejection of a petition for rulemaking was arbitrary and capricious, it *might* grant the first request and order the agency to reconsider its denial,[6] but it *would not* directly order the agency to initiate specific rulemaking proceedings, much less order it to implement a rule mandating plaintiffs' preferred method (a ban on midwater trawl vessels).  *See, e.g.*, *Prof'l Drivers Council v. Bureau of Motor Safety*, 706 F.2d 1216, 1223–24 (D.C. Cir. 1983) (holding that private parties have "no right to compel the agency to hold rulemaking proceedings addressing its specific recommendations for amending the existing rules").  The statutes plaintiffs invoke in their petition grant the agency discretion to implement Congressional policies to prevent overfishing and bycatch.  *See, e.g.*, 16 U.S.C. § 1851(a)(9) ("Conservation and management measures shall, *to the extent practicable,* (A) minimize bycatch and (B) to the

---

[6] Notably, Judge Facciola's opinion did not even go that far, remanding the case to the agency while denying both parties' motions for summary judgment *pendente lite*.  R&R 22.

extent bycatch cannot be avoided, minimize the mortality of such bycatch." (emphasis added)); §

1851(a)(2) (such measures must be based "upon the best scientific information available"); *see

also* Petition 5–8.   This Court lacks both the expertise and the authority to usurp agency

discretion by ordering it to consider or adopt particular rules.   Accordingly, in this action

plaintiffs would, at most, be entitled to an order that the agency reconsider its denial of their

petition.

And, the agency has taken actions that render this form of relief moot. It has adopted a

proposed rule on the issue raised by the petition in which the agency expressly considered (and

rejected)  the proposal advanced by petitioners.  78 Fed. Reg. 33020, 33033. The agency states,

and plaintiffs do not deny, that plaintiffs participated in this preliminary process and defended

their favored method.  Defs.' Notice of Recent Developments 3, ECF No. 65.  And, now that the

agency has issued a proposed rule, 78 Fed. Reg. 33020, plaintiffs may *once again* participate in

the rulemaking through public comment.   All of this goes far beyond the equitable relief

plaintiffs could hope to obtain from this Court upon receiving a favorable ruling in this case,

which would be limited to an order that the agency reconsider its denial of its petition for

rulemaking.  As there is no outstanding relief to which plaintiffs might be entitled to receive

from the Court in this action, plaintiffs "lack a legally cognizable interest in the outcome."

*Already,* 133 S. Ct. at 726–27.  Accordingly, the case is moot.

## IV.    CONCLUSION

For the foregoing reasons, the Court overrules the report and recommendation and will

dismiss the case as moot.

An Order will issue with this opinion.

Signed by Royce C. Lamberth, Chief Judge, on June 10, 2013.